**THIRD DIVISION
RICKMAN, C. J.,
DOYLE, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**February 28, 2023**

# In the Court of Appeals of Georgia

A22A1747. LYNCH et al. v. LYNCH et al.

DOYLE, Presiding Judge.

Mary Lynch, individually and as executor of the estate of Charles Lynch, III (the "Decedent"), appeals from the trial court's grant of partial summary judgment in favor of Charles Logan Lynch and David Lynch (the "Plaintiffs"). The court found that the Decedent's estate was liable for a breach of contract claim stemming from the Decedent's divorce settlement. For the reasons set forth infra, we affirm the trial court's finding that the estate is liable, but reverse the court's finding that Mary Lynch is personally liable.

Viewed in the light most favorable to Mary Lynch, as the nonmovant below, the record shows the following.[1] The Decedent and Patricia Lynch divorced in 1971.

---

[1] See *Griffin v. State Bank of Cochran*, 312 Ga. App. 87 (718 SE2d 35) (2011).

The settlement agreement, which was incorporated into the divorce decree, provided that:

> [The Decedent] agrees to execute a will within 30 days from the date of the execution of this agreement which will provide that the will is irrevocable. [The Decedent] shall bequeath one-half interest in Shepard Decorating Company and his entire interest in Shepard Drayage Service, Inc., which are to be acquired from [Patricia Lynch], and any successor thereto to be divided equally among Charles L. Lynch, Lawrence S. Lynch, and David N. Lynch. . . . The will will further provide that if [the Decedent's] one-half interest in Shepard Decorating Company is sold prior to his death, or his interest in Shepard Drayage Service, Inc., is sold prior to his death, that said children or their lineal descendants shall receive in cash at the time of his death an amount equal to one-half the proceeds of the sale of Shepard Decorating Company and the entire proceeds of the sale of Shepard Drayage Service, Inc. If [the Decedent's] last will and testament as probated fails to comply with the provisions of this agreement, then [the Decedent] binds his estate, his heirs, [and] assigns to transfer said one-half interest in Shepard Decorating Company and his entire interest in Shepard Drayage Service, Inc. or the proceeds of any sale thereof, to said children or their lineal descendants[.]

Patricia Lynch, along with the other co-owners of Shepard Decorating Company and Shepard Drayage Service, transferred their interest in the companies to Decedent a year later in 1972. As a result of this transaction, the Decedent became

2

the sole proprietor of both companies, and Patricia Lynch satisfied her obligation in the settlement agreement to transfer her interests in the companies to the Decedent.

In 1978, the Decedent transferred all of the assets of Shepard Decorating Company and Shepard Drayage Service into a single entity, Shepard Convention Service Contractors, Inc.[2] In 1982, the Decedent sold Shepard Convention Service Contractors and Shepard Drayage Service for $1.1 million. The agreement assigned a value of $1,005,000 to Shepard Convention Service Contractors and $95,000 to Shepard Drayage Service.

The Decedent died in 2016. The Decedent's will did not direct that any proceeds from the two companies be paid to the Plaintiffs. In fact, the will disclaimed that any amount was due under that provision of the settlement agreement, stating that "[a]t the time of closure of [the] two companies [in 1978,] each had a negative net worth, thus no proceeds of the closure are due under [the divorce decree]."

The Plaintiffs sued Mary Lynch, individually and as executor of the estate of the Decedent. They asserted claims of breach of contract, debt as a result of the

---

[2] In her affidavit, Mary Lynch claims that the two companies were "dissolved . . . due to a change in banking laws and because both companies were operating at a loss." The transfer agreement allowed the new company to continue to use the trade names of the two old companies and wind down any business that was in progress.

breach of contract claim, and equitable relief. The Plaintiffs filed a motion for partial summary judgment on the issue of liability only, that is, the Plaintiffs left open the amount of damages due under the settlement agreement. The trial court granted the Plaintiffs' motion for partial summary judgment, and this appeal followed.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[3]

With these guiding principles in mind, we now turn to Mary Lynch's claims of error.

1. Mary Lynch argues that Patricia Lynch did not transfer her interest in the two companies until a year after the divorce decree, and that she transferred her portion of the companies free and clear of any liens, security interests, and encumbrances. Mary Lynch contends that these circumstances created a genuine issue of material fact in the case.

"Settlement agreements in divorce cases are construed in the same manner as all other contractual agreements. The meaning and effect of the settlement agreement

---

[3] (Citations and punctuation omitted.) *Griffin*, 312 Ga. App. at 87.

4

should be determined according to the usual rules for the construction of contracts, the cardinal rule being to ascertain the intention of the parties."[4]

Although she does not expound upon this argument, Mary Lynch appears to contend that this later transfer somehow modified the provisions of the settlement agreement. However, the transfer was made pursuant to the settlement agreement, and the agreement provided that Patricia Lynch transfer "all" of her interest in the companies. Moreover, the settlement agreement was not an encumbrance or lien on the companies restricting their alienability. The agreement contemplated that the companies could be sold, without any potential debt going with the companies, and without the proceeds being paid to the Plaintiffs at the time of sale. Finally, if the parties had intended the transfer to modify the settlement agreement, then the transfer would have clearly stated so.[5] Thus, the transfer did not create a genuine issue of material fact in the case.

---

[4] (Citations and punctuation omitted.) *Messick v. Messick*, 359 Ga. App. 481, 482 (3) (858 SE2d 758) (2021).

[5] See *Hart v. Hart*, 297 Ga. 709, 713 (777 SE2d 431) (2015).

2. Mary Lynch argues that the testamentary gifts to the Plaintiffs were adeemed or destroyed prior to the Decedent's death because funds from the sale were completely depleted by 1992.

Under OCGA § 53-4-66, subject to exceptions not relevant here, "a specific testamentary gift is adeemed or destroyed, wholly or in part, when the testator for any reason does not own the subject of such gift at death." That is, "[i]f the will is otherwise silent, a specific devise is adeemed when, after the execution of said will, the testat[or] conveys to another the specific property devised[.]"[6]

Here, the plaintiffs brought a breach of contract claim because the will did not devise the proceeds of the sale to the Plaintiffs as required by the settlement agreement. Thus, as the claim was brought under the settlement agreement and not the will, OCGA § 53-4-66 was not implicated in the first place. Additionally, while Mary Lynch claims that any proceeds were depleted by 1992, "money is intangible personalty that is fungible, because it belongs to a class of property which cannot be differentiated by specific identification unless there has been created a specific fund

---

[6] (Citation and punctuation omitted.) *Fletcher v. Ellenburg*, 279 Ga. 52, 54 (1) (609 SE2d 337) (2005).

6

that has been set aside from other money."[7] And although the will claims that there were no proceeds from the sale of the companies, the issue of the amount of proceeds/damages remains pending in the trial court. Accordingly, the trial court did not err in declining to apply OCGA § 53-4-66.

3. Mary Lynch argues that the trial court erred when it imposed personal liability on her. We agree.

In the Plaintiffs' motion for summary judgment, the Plaintiffs contended — in two lines not delineated by separate argument — that the Decedent's "heirs and assigns" were liable because the settlement agreement purported to bind them. The trial court's order, understandably, did not specifically address the issue of Mary Lynch's personal liability, but did grant the Plaintiffs' motion for partial summary judgment.

Mary Lynch was not a party to the settlement agreement. "It is axiomatic that a person who is not a party to a contract is not bound by its terms."[8] Nor did the Plaintiffs otherwise bring a claim that could impose personal liability, such as breach

---

[7] *Taylor v. Powertel, Inc.*, 250 Ga. App. 356, 359 (2) (551 SE2d 765) (2001).

[8] (Citation and punctuation omitted.) *Souza v. Berberian*, 342 Ga. App. 165, 170 (2) (802 SE2d 401) (2017).

of fiduciary duty[9] or premature distribution of the estate to heirs and beneficiaries.[10] Thus, given the procedural posture below, the Plaintiffs have not yet met their burden of establishing personal liability on Mary Lynch.[11] Accordingly, the trial court erred to the extent it imposed personal liability.

In summary, we affirm the trial court's finding that the estate is liable, but reverse the court's finding that Mary Lynch is personally liable. We express no opinion as to the amount of damages, if any, owed to the Plaintiffs.

*Judgment affirmed in part and reversed in part. Rickman, C. J., and Senior Appellate Judge Herbert E. Phipps concur.*

---

[9] See OCGA § 53-7-54.

[10] See OCGA § 53-7-43.

[11] See *Morris v. Real Estate Expert Advisors, LLC*, 365 Ga. App. 734, 740 (1) (b) (880 SE2d 218) (2022) (holding that the movants never attempted to meet their summary judgment burden in the trial court); see also id. at 740 (2) ("This is a Court for the correction of errors of law, and if the trial court has not ruled on an issue there is nothing for this Court to review upon appeal.") (citation and punctuation omitted).